# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00710-CR

**David Alan Price, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY
### NO. 613305, HONORABLE DAVID F. CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant David Price was convicted by a jury of driving while intoxicated, and sentenced by the trial court to one hundred eighty days' confinement and a $2,000 fine. *See* Tex. Pen. Code Ann. § 49.04 (West 2003). His confinement and $1,000 of the fine were probated for two years. In his sole issue, he argues that the trial court erred by admitting evidence that the horizontal gaze nystagmus test was administered. We will affirm the judgment.

## BACKGROUND

At approximately 12:48 a.m. on May 25, 2002, Austin Police Department officer Michael Morgovnik observed appellant driving a red truck without its headlights on at the intersection of Fourth and Lavaca Streets in downtown Austin. Morgovnik pulled up behind appellant, turned on his overhead lights, and "blasted [his] air horn" and siren "a few times."

Morgovnik testified that appellant kept driving while Morgovnik "kept blasting [his] air horn and siren so that he would know I was behind him with my lights on." Appellant drove approximately "two full city blocks in downtown Austin" before he finally stopped.

Morgovnik testified that he approached appellant to ask for his driver's license and insurance, but appellant "appeared kind of out of it" and "didn't seem to understand exactly what I was asking him for." Morgovnik stated that he had to ask appellant for his license and insurance three or four times before appellant complied. Morgovnik asked appellant where he had been that night, and when appellant faced Morgovnik to respond that he was coming from a steakhouse on Colorado Street, Morgovnik "detected a strong odor of alcohol on [appellant's] breath." Appellant admitted that he had consumed two glasses of wine.

Morgovnik called for a DWI enforcement unit, but none were available.[1] In response to further questioning, appellant told Morgovnik that he began drinking around midnight and had consumed his last drink "just a minute ago." Although he had previously told Morgovnik that he had consumed two glasses of wine, a few minutes later Morgovnik asked him again, and appellant responded that he had consumed three or four drinks. Morgovnik testified that appellant "seemed very depressed or very—kind of sedate, dazed, I guess you'd say. He had a strong odor of alcohol on his breath. His speech was very slurred and mumbled. And he was swaying just standing there talking with me." Morgovnik emphasized to the jury that appellant "didn't appear to be functioning as a normal person would normally function."

---

[1] The DWI enforcement units are comprised of APD officers who focus on making traffic stops to detect individuals who are driving while intoxicated and assisting with traffic stops by administering field sobriety tests so that other officers may respond to different types of police calls.

Morgovnik then testified regarding appellant's performance of the field sobriety tests. Specifically, he testified that appellant "had a very difficult time understanding my instructions, which were to follow the tip of my finger with his eyeballs and not move his head. He couldn't grasp that for quite some time." As Morgovnik "checked for equal tracking on both eyes," he saw that appellant's eyes "were bouncing as they moved from side to side, which is the first clue." Then, Morgovnik "took it to maximum deviation and held it out there. And his eyes were bouncing around on both sides. And then I just took it a little bit from center. And his eyes just kind of bounced from center, which is six of the six clues I was looking for." Based on this, Morgovnik concluded that appellant had consumed "a high level of alcohol." Morgovnik also described appellant's difficulty in performing the "walk and turn" and "one leg stand" tests. Based on the results of the three tests, the strong odor of alcohol on appellant's breath, appellant's disorientation, inconsistency in the amount of alcohol appellant admitted consuming in various time periods, and his slurred speech, Morgovnik concluded that appellant was intoxicated. Appellant was arrested but declined to give a breath sample.

At trial, appellant testified that the night he was stopped, he was intimidated by Morgovnik, was "extremely nervous" about the effect of an arrest on his career, and felt that his "whole life was going to come crashing down." He did not believe that he was intoxicated that night or that he had swayed while talking to Morgovnik.

The jury found appellant guilty of driving while intoxicated, and the trial court sentenced him to one hundred eighty days' confinement and a $2,000 fine but probated his confinement and $1,000 of the fine for two years. *See id.*

3

**DISCUSSION**

In his sole issue, appellant complains that the court erred in admitting Morgovnik's testimony because there was insufficient evidence that he was qualified to give expert testimony regarding the horizontal gaze nystagmus test. A trial court has broad discretion in deciding whether a witness qualifies as an expert, *Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990), and its ruling on the admissibility of scientific expert testimony is reviewed for an abuse of discretion. *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005).

Field sobriety tests do not measure alcohol concentration but instead reflect the degree to which the subject's normal mental or physical faculties are impaired by an intoxicant. *Douthitt v. State*, 127 S.W.3d 327, 337 (Tex. App.—Austin 2004, no pet.) (citing *Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994)). Nystagmus is defined as an "involuntary rapid oscillation of the eyeballs in a horizontal, vertical, or rotary direction." *Emerson*, 880 S.W.2d at 765 (citing R. Berkow, ed., The Merck Manual of Diagnosis and Therapy 1429 (1992)). Horizontal gaze nystagmus (HGN) is a variety of nystagmus that occurs when an individual's eyes are deviated to the lateral extreme. *Id*. Smooth pursuit eye movements are "slow, conjugate movements that enable the eyes to maintain a clear view of an object moving across the visual field." *Id*. The effect of alcohol on nystagmus, specifically HGN, is well-documented. *Id*. at 766. Consumption of alcohol has also been found to effect smooth pursuit. *Id*. However, nystagmus may also be caused by factors other than alcohol, such as other drugs, neurological disorders, or brain damage. *Id*.

HGN test evidence is sufficiently reliable to be admitted as an indicator of intoxication. *Emerson*, 880 S.W.2d at 768-69. A witness qualified by knowledge, skill, experience,

4

training, or education may give an opinion or otherwise testify to scientific, technical, or other specialized knowledge if it will assist the trier of fact to understand the evidence or determine a fact issue. Tex. R. Evid. 702. Although a police officer seeking to testify about a defendant's performance on an HGN test must be qualified as an expert in the test's administration and technique, *Emerson*, 880 S.W.2d at 769, it is not necessary that he be certified by the State of Texas if he is qualified by other training or experience. *See Smith v. State*, 65 S.W.3d 332, 344 (Tex. App.—Waco 2001, no pet.); *Kerr v. State*, 921 S.W.2d 498, 502 (Tex. App.—Fort Worth 1996, no pet.).

Morgovnik testified that he was not certified as a practitioner for purposes of administration of the HGN test but that he had been an APD officer for six years and was "certified" in HGN testing and as an intoxilyzer operator.[2] At the police academy, he was "trained in standardized field sobriety tests as it relates to DWI enforcement, specifically horizontal gaze nystagmus," as well as the "walk-and-turn test and the one-leg-stand test." He stated that he believed he had "a couple of certificates" as a result of his training and that he administered field sobriety tests as part of his normal DWI enforcement procedures. The record reflects that, in his six years as an officer, Morgovnik has investigated "a couple thousand" of individuals for DWI, and has personally arrested approximately three or four hundred people for DWI. Within the last year before his

---

[2] Morgovnik explained that "[t]here's a basic level of certification. And you can do thirty tests and record them all and send it in for an additional level. And I never got around to doing that within the six-month window." Thus, he completed the basic certification process to administer the HGN test, but did not complete additional procedures in order to be certified as a practitioner.

testimony, Morgovnik had taken "a refresher course on the field sobriety tests, especially the horizontal gaze nystagmus," in order to make sure he remained current on his training.

Based on this record, we hold that the trial court did not abuse its discretion by allowing Morgovnik to testify about the HGN test. *See* Tex. R. Evid. 702; *see also Smith*, 65 S.W.3d at 344; *Kerr*, 921 S.W.2d at 502. We overrule appellant's sole issue.

## CONCLUSION

Having overruled appellant's issue, we affirm the judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   June 23, 2006

Do Not Publish