TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00710-CR






David Alan Price, Appellant


v.


The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY

NO. 613305, HONORABLE DAVID F. CRAIN, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Appellant David Price was convicted by a jury of driving while intoxicated, and
sentenced by the trial court to one hundred eighty days' confinement and a $2,000 fine. See Tex.
Pen. Code Ann. § 49.04 (West 2003). His confinement and $1,000 of the fine were probated for two
years. In his sole issue, he argues that the trial court erred by admitting evidence that the horizontal
gaze nystagmus test was administered. We will affirm the judgment.


BACKGROUND


 At approximately 12:48 a.m. on May 25, 2002, Austin Police Department officer
Michael Morgovnik observed appellant driving a red truck without its headlights on at the
intersection of Fourth and Lavaca Streets in downtown Austin. Morgovnik pulled up behind
appellant, turned on his overhead lights, and "blasted [his] air horn" and siren "a few times." 
Morgovnik testified that appellant kept driving while Morgovnik "kept blasting [his] air horn and
siren so that he would know I was behind him with my lights on." Appellant drove approximately
"two full city blocks in downtown Austin" before he finally stopped.

 Morgovnik testified that he approached appellant to ask for his driver's license and
insurance, but appellant "appeared kind of out of it" and "didn't seem to understand exactly what
I was asking him for." Morgovnik stated that he had to ask appellant for his license and insurance
three or four times before appellant complied. Morgovnik asked appellant where he had been that
night, and when appellant faced Morgovnik to respond that he was coming from a steakhouse on
Colorado Street, Morgovnik "detected a strong odor of alcohol on [appellant's] breath." Appellant
admitted that he had consumed two glasses of wine.

 Morgovnik called for a DWI enforcement unit, but none were available. (1) In response
to further questioning, appellant told Morgovnik that he began drinking around midnight and had
consumed his last drink "just a minute ago." Although he had previously told Morgovnik that he
had consumed two glasses of wine, a few minutes later Morgovnik asked him again, and appellant
responded that he had consumed three or four drinks. Morgovnik testified that appellant "seemed
very depressed or very--kind of sedate, dazed, I guess you'd say. He had a strong odor of alcohol
on his breath. His speech was very slurred and mumbled. And he was swaying just standing there
talking with me." Morgovnik emphasized to the jury that appellant "didn't appear to be functioning
as a normal person would normally function."

 Morgovnik then testified regarding appellant's performance of the field sobriety tests. 
Specifically, he testified that appellant "had a very difficult time understanding my instructions,
which were to follow the tip of my finger with his eyeballs and not move his head. He couldn't
grasp that for quite some time." As Morgovnik "checked for equal tracking on both eyes," he saw
that appellant's eyes "were bouncing as they moved from side to side, which is the first clue." Then,
Morgovnik "took it to maximum deviation and held it out there. And his eyes were bouncing around
on both sides. And then I just took it a little bit from center. And his eyes just kind of bounced from
center, which is six of the six clues I was looking for." Based on this, Morgovnik concluded that
appellant had consumed "a high level of alcohol." Morgovnik also described appellant's difficulty
in performing the "walk and turn" and "one leg stand" tests. Based on the results of the three tests,
the strong odor of alcohol on appellant's breath, appellant's disorientation, inconsistency in the
amount of alcohol appellant admitted consuming in various time periods, and his slurred speech,
Morgovnik concluded that appellant was intoxicated. Appellant was arrested but declined to give
a breath sample.

 At trial, appellant testified that the night he was stopped, he was intimidated by
Morgovnik, was "extremely nervous" about the effect of an arrest on his career, and felt that his
"whole life was going to come crashing down." He did not believe that he was intoxicated that night
or that he had swayed while talking to Morgovnik.

 The jury found appellant guilty of driving while intoxicated, and the trial court
sentenced him to one hundred eighty days' confinement and a $2,000 fine but probated his
confinement and $1,000 of the fine for two years. See id.


DISCUSSION

 In his sole issue, appellant complains that the court erred in admitting Morgovnik's
testimony because there was insufficient evidence that he was qualified to give expert testimony
regarding the horizontal gaze nystagmus test. A trial court has broad discretion in deciding whether
a witness qualifies as an expert, Sterling v. State, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990), and
its ruling on the admissibility of scientific expert testimony is reviewed for an abuse of discretion. 
Russeau v. State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005).

 Field sobriety tests do not measure alcohol concentration but instead reflect the degree
to which the subject's normal mental or physical faculties are impaired by an intoxicant. Douthitt
v. State, 127 S.W.3d 327, 337 (Tex. App.--Austin 2004, no pet.) (citing Emerson v. State, 880
S.W.2d 759, 769 (Tex. Crim. App. 1994)). Nystagmus is defined as an "involuntary rapid oscillation
of the eyeballs in a horizontal, vertical, or rotary direction." Emerson, 880 S.W.2d at 765 (citing 
R. Berkow, ed., The Merck Manual of Diagnosis and Therapy 1429 (1992)). Horizontal gaze
nystagmus (HGN) is a variety of nystagmus that occurs when an individual's eyes are deviated to
the lateral extreme. Id. Smooth pursuit eye movements are "slow, conjugate movements that enable
the eyes to maintain a clear view of an object moving across the visual field." Id. The effect of
alcohol on nystagmus, specifically HGN, is well-documented. Id. at 766. Consumption of alcohol
has also been found to effect smooth pursuit. Id. However, nystagmus may also be caused by factors
other than alcohol, such as other drugs, neurological disorders, or brain damage. Id. 

 HGN test evidence is sufficiently reliable to be admitted as an indicator of
intoxication. Emerson, 880 S.W.2d at 768-69. A witness qualified by knowledge, skill, experience,
training, or education may give an opinion or otherwise testify to scientific, technical, or other
specialized knowledge if it will assist the trier of fact to understand the evidence or determine a fact
issue. Tex. R. Evid. 702. Although a police officer seeking to testify about a defendant's
performance on an HGN test must be qualified as an expert in the test's administration and
technique, Emerson, 880 S.W.2d at 769, it is not necessary that he be certified by the State of Texas
if he is qualified by other training or experience. See Smith v. State, 65 S.W.3d 332, 344 (Tex.
App.--Waco 2001, no pet.); Kerr v. State, 921 S.W.2d 498, 502 (Tex. App.--Fort Worth 1996, no
pet.).

 Morgovnik testified that he was not certified as a practitioner for purposes of
administration of the HGN test but that he had been an APD officer for six years and was "certified"
in HGN testing and as an intoxilyzer operator. (2) At the police academy, he was "trained in
standardized field sobriety tests as it relates to DWI enforcement, specifically horizontal gaze
nystagmus," as well as the "walk-and-turn test and the one-leg-stand test." He stated that he believed
he had "a couple of certificates" as a result of his training and that he administered field sobriety tests
as part of his normal DWI enforcement procedures. The record reflects that, in his six years as an
officer, Morgovnik has investigated "a couple thousand" of individuals for DWI, and has personally
arrested approximately three or four hundred people for DWI. Within the last year before his
testimony, Morgovnik had taken "a refresher course on the field sobriety tests, especially the
horizontal gaze nystagmus," in order to make sure he remained current on his training. 

 Based on this record, we hold that the trial court did not abuse its discretion by
allowing Morgovnik to testify about the HGN test. See Tex. R. Evid. 702; see also Smith, 65 S.W.3d
at 344; Kerr, 921 S.W.2d at 502. We overrule appellant's sole issue.


CONCLUSION


 Having overruled appellant's issue, we affirm the judgment. 


__________________________________________

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: June 23, 2006

Do Not Publish
1. The DWI enforcement units are comprised of APD officers who focus on making traffic
stops to detect individuals who are driving while intoxicated and assisting with traffic stops by
administering field sobriety tests so that other officers may respond to different types of police calls. 
2. Morgovnik explained that "[t]here's a basic level of certification. And you can do thirty
tests and record them all and send it in for an additional level. And I never got around to doing that
within the six-month window." Thus, he completed the basic certification process to administer the
HGN test, but did not complete additional procedures in order to be certified as a practitioner.