NO. 12-04-00033-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


BEN LEE JOHNSON, JR.,                               §     APPEAL FROM THE 
APPELLANT

V.                                                                         §     COUNTY COURT AT LAW OF

THE STATE OF TEXAS,
APPELLEE                                                        §     HENDERSON COUNTY, TEXAS





MEMORANDUM OPINION
            Appellant Ben Lee Johnson, Jr. was convicted of misdemeanor driving while intoxicated, was
sentenced to confinement for 180 days, probated for eighteen months, and was assessed a fine of
$2,000.00. Appellant raises one issue on appeal. We affirm.

Background
            On May 8, 2000, Appellant was charged by information with the class B misdemeanor
offense of driving while intoxicated. Appellant pleaded “not guilty” to the charge and elected to
have his case tried to a jury. 
            During the trial, Texas Department of Public Safety (“DPS”) Trooper James Martin testified
that at around 10:00 p.m. on April 15, 2000, he and Trooper Scott Smith were on patrol on Farm-to-Market Road 59 in Henderson County when they passed a 1999 Mercury Sable traveling in the
opposite direction. Martin’s traffic radar clocked the vehicle traveling at 77 miles per hour,
seventeen miles per hour over the posted speed limit, so he decided to pursue the vehicle. Martin
testified that Appellant was the driver of that vehicle. 
            When Martin approached Appellant, he noticed that he had a “stare set to his face,” which
was indicative of possible intoxication. Martin asked Appellant to exit the vehicle and walk to the
back of the vehicle. As Appellant walked to Martin’s car, he noticed that Appellant was unsure of
his balance. Martin testified that when Appellant approached him, he smelled alcohol emanating
from Appellant’s breath and told Appellant he smelled alcohol. Appellant paused and said that he
“had a beer at the camp out.” Martin then had Appellant perform standardized field sobriety tests
in order to evaluate whether Appellant was intoxicated.



            The first test Martin had Appellant perform was the horizontal gaze nystagmus (“HGN”) test. 
Martin testified that “nystagmus” is “involuntary jerking of the eyes” and that if the introduction of
alcoholic beverages is “severe” enough, then the nystagmus will be very clear to the naked eye when
an intoxicated person gazes to the side. Martin testified that when looking at the results of these tests
to determine intoxication, peace officers must look for three clues in each eye or a total of six clues
for two eyes. The first clue is a lack of smooth pursuit, which means that as the person looks from
side to side, his eye “jerks.” The second clue is whether there is “distinct nystagmus at maximum
deviation.” This clue is triggered when a person looks out of the corner of his or her eye at a pen
held by the officer at an angle from the person’s face and the eyeball moves. In contrast, a non-intoxicated person’s eye would not move when at maximum deviation. The third clue is “onset prior
to 45 degrees.” This clue is exhibited when a person’s eye begins “jerking” while the person is
moving his or her eye to the corner of the eye socket. 
            At this point in the trial, the jury was excused so the attorneys could argue whether Martin
was qualified to discuss the percentage of reliability of the field sobriety testing.


 After the jury left
the courtroom, the following exchange took place:
 
THE COURT:Okay. Now we can talk freely.
 
STATE’S COUNSEL:Your Honor, in Emerson v. State, the court of appeals itself took notice 
              that the horizontal gaze and nystagmus is reliable. It’s based on credible scientific testimony.
 
APPELLANT’S COUNSEL:Your Honor, I haven’t objected to the qualifications of this 
officer to testify to the horizontal gaze and nystagmus nor to the admissibility of the horizontal gaze
and nystagmus or the results. What I do object to is any testimony related to any purported probability
of success or percentage of success related to studies conducted outside of Texas that aren’t based
upon .08 standard which I don’t, my reading says there are none that were conducted in Texas based
on Texas law based on .08 or based on a .08 standard. I believe the studies that were done. . .either
based on a .10 standard or based on a .05 standard in Colorado, and a .04 standard in California, and
the actual results of those studies, what they state is that they were reliable to a certain degree to
indicate the presence of alcohol. Not reliability as to intoxication, and particularly not to intoxication
under a .08.
 
So I would object to this witness testifying to them in that there’s not been a proper predicate
laid. Also based on relevance in general, and based on scientific evidence which I don’t believe
proper predicate has been laid under either the reliability or the relevance standard of scientific
evidence. 
 
STATE’S COUNSEL:Your Honor, we’re not attempting to extrapolate a specific blood alcohol 
level from these tests. They’ve been evaluated by the National Highway Safety Authority
[(“NHTSA”)]. They’re used as the standardized field tests because of that. We would ask to at least
be able to refer to N.H.T.S.A.’s own studies.
 
THE COURT:I’ll allow you to go into it. I think it probably goes more to its reliability or the
credibility of the evidence and not its admissibility. So I’ll let you go into it and I’ll overrule the
objection.
 
            Appellant’s counsel then proceeded to voir dire Martin, outside the jury’s presence, on the
reliability of the HGN studies. He testified that he did not take part in any of the studies performed
by a “Southern California research institute,” but he was familiar with the study. Martin further
stated that “[e]verything that comes out of [his] mouth is from the Texas Department of Public
Safety or what I was trained by the Texas A&M Extension Service or by the book sitting beside you. 
Nothing more.” When asked further about everything he had in his possession that he relied on in
forming his opinion, Martin told the court that he relied upon his case report and “a manual.”


 When
asked by the court if he wished to look at the manual, Appellant’s counsel replied:
 
Your Honor, may I look at it just briefly? Your Honor, I think that’s the same information that I have. 
If that’s all that he used in relying or forming the basis of his opinion and there’s not any other written
materials, I’ll withdraw the objection. 
 
            The jury was shown back into the courtroom, and the trial went forward. Martin later
testified that if four or more clues are observed while performing the HGN test, then those four clues
“indicate a blood alcohol concentration of .08 within 88 percent accuracy.” No objection was made
to this testimony. Martin further testified that during the HGN test, Appellant’s eyes had a lack of
smooth pursuit because they were “very jerky.” He also noticed that Appellant’s eyes had nystagmus
prior to 45 degrees and that he was never able to get Appellant’s eyes “all the way up to maximum
deviation.” 
            Martin also asked Appellant to perform the walk-and-turn test. This test involves the subject
placing his right foot in front of his left while walking in a straight line. The clues of intoxication
to look for during this test are 1) inability to balance during the instructions, 2) starting before the
instructions are finished, 3) stopping while walking, 4) stepping off a line, 5) not touching heel to
toe on all steps, 6) using arms for balance, 7) making the turn incorrectly, and 8) not walking the
correct number of steps. Martin related that, in his training, two clues being exhibited during this
test indicates a 79 percent reliability of a .08 blood alcohol concentration. No objection was made
to this testimony. When Appellant performed the walk-and-turn test, Martin noticed five clues for
intoxication, namely that Appellant 1) could not keep his balance while listening to instructions, 2)
would separate his feet, 3) did not touch heel to toe on all of his steps, 4) used his arms for balance,
and 5) performed the turn incorrectly.
            During the one leg stand test, Appellant was asked to keep his hands to his sides and raise
his foot off the ground for thirty seconds while counting to thirty using a “one thousand” count. 
Martin stated that based on his training, two clues of intoxication indicate an 83 percent reliability
of a .08 blood alcohol concentration. Appellant did not object to this testimony. Martin noticed that
Appellant exhibited two clues of intoxication during this test by swaying while balancing and using
his arms for balance. 
            Martin also asked Appellant to recite the alphabet and to count from 30 to 17 backwards. 
Appellant correctly recited the alphabet, but counted back to 16 instead of stopping at 17, thus
exhibiting a clue of intoxication. Martin also asked Appellant to submit to a portable breath test, but
Appellant refused. Appellant was then arrested for driving while intoxicated. 
            When Appellant arrived at the Henderson County Justice Center, he refused to submit to an
Intoxilyzer test or a blood test to specifically determine his blood alcohol content. Appellant also
performed the walk-and-turn and one leg stand tests. Appellant failed the walk-and-turn test when
he “took about three steps and staggered.” Appellant also failed the one leg stand test when he raised
his foot, “counted just a little bit, and staggered.” Based on Appellant’s performance on the field
sobriety tests, Martin concluded that Appellant was intoxicated.
            During cross-examination, Appellant’s counsel questioned Martin on the 88 percent
reliability of the HGN test and the studies that accompanied that percentage. Martin stated that he
was not familiar with the studies, but that the 88 percentage reliability for a .08 blood alcohol content
was what he had been told during training. 
            At the conclusion of the trial, the jury convicted Appellant of misdemeanor driving while
intoxicated, sentenced him to confinement for 180 days, probated for eighteen months, and assessed
a fine of $2,000.00. 

Analysis
            On appeal, Appellant contends that the trial court committed reversible error by allowing
Martin to testify about the percentages of reliability of the field sobriety tests. However, we must
first address, as the State argues, whether Appellant waived any error from Martin’s testimony
regarding the percentages of reliability by failing to object to the testimony when it was elicited.
            A defendant waives his right to complain on appeal of nearly all trial court error, including
constitutional error, if he fails to object to the error at trial. Aldrich v. State, 104 S.W.3d 890, 894
(Tex. Crim. App. 2003). There are only two narrow exceptions to this rule: violations of rights that
are "waivable only" and rights that are "absolute systemic requirements." Id. at 895. In the instant
case, Appellant’s counsel withdrew any objection he had to Martin’s testimony and also failed to
object again when the testimony regarding the percentages of reliability was elicited. Appellant has
failed to show that the alleged evidentiary error falls within one of the two exceptions to the waiver
rule. Therefore, Appellant has waived his complaint for appeal. See Tex. R. App. P. 33.1(a); 
see  Davis v. State 830 S.W.2d 762, 764 (Tex. App.– Houston [1st Dist.] 1992, pet. ref’d.) (citing
Sheeley v. State, 530 S.W.2d 108, 109 (Tex. Crim. App. 1975)) (any objection was waived or
withdrawn by the subsequent explicit statement of counsel that he had “no objection”; therefore,
nothing was preserved for appellate review).
            Even if Appellant had not waived his complaint on appeal, his argument would still fail. In
Smith v. State, 65 S.W.3d 332, 345 (Tex. App.– Waco 2001, no pet.), the arresting police officer
gave testimony that correlated the defendant’s failure of field sobriety tests to a precise blood alcohol
content. Id. The court found that the admission of this testimony was error because a defendant’s
performance on the tests are not sufficiently reliable indicators of a precise blood alcohol content. 
Id. at 348. However, the court held that the error was harmless because the testimony only had a
“slight” influence on the jury’s verdict, given the fact that it heard additional evidence of the
defendant’s intoxication, i.e., that the defendant “smelled of alcohol, [had] bloodshot eyes, and failed
field sobriety tests.” Id. 
            In the case at hand, the jury heard evidence that Appellant 1) had alcohol on his breath, 2)
had a “set stare on his face,” 3) told Martin that he had been drinking, and 4) failed every sobriety
test. Therefore, under  Smith, any error in admitting Martin’s testimony, had an objection been made,
was harmless. Accordingly, Appellant’s sole issue is overruled.

Disposition
            The judgment of the trial court is affirmed.

                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice

Opinion delivered December 15, 2004.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.








(DO NOT PUBLISH)