Gary Lee WISDOM, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–99–186–CR.

Court of Appeals of Texas,
Waco.

Jan. 31, 2001.

Rehearing Overruled March 14, 2001.

Jerry Cobb, Philips, Hopkins, Eames &
Cobb, P.C., Denton, for appellant.

Bruce Isaacks, Denton County Criminal District Attorney, Pamela J. Moore Lakatos, Denton County Asst. Criminal District Attorney, Denton, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

GRAY, Justice.

Gary Lee Wisdom was charged with and convicted of Driving While Intoxicated by a jury, enhanced by one prior DWI. The evidence to convict him included a videotape and an officer's testimony regarding his performance on standard sobriety tests. On appeal, Wisdom contends the trial court erred when it admitted pages from a DWI Detection Manual, which included a general statement regarding the correlation between standardized sobriety test results and blood-alcohol concentration. The judgment of the trial court is affirmed.

PROCEDURAL BACKGROUND

Gary Lee Wisdom was charged by information with the misdemeanor offense of Driving While Intoxicated, enhanced by one prior DWI. To this charge, he pled not guilty. The jury convicted him and the trial court sentenced Wisdom to 365 days in jail and a $4000 fine. The trial court suspended the imposition of jail time and reassessed Wisdom's punishment to include two years community supervision, a $4000 fine, and a 30–day jail sentence as a condition of the probation. He appeals one issue.

FACTS

On September 29, 1997, at approximately 10:30 p.m., Officer Greg Neal's attention was drawn to a black jeep. He clocked the jeep going 52 mph in a 35 mph zone so he turned his patrol car around and pulled the vehicle over for speeding. Wisdom was the driver of the black jeep. Neal testified that when Wisdom handed his driver's license and insurance to him, he noticed a strong smell of alcohol. He also testified that he noticed that Wisdom's eyes were watery and that his speech was slurred.

After running a license check, Neal asked Wisdom to step out of the vehicle. Neal testified that as Wisdom stepped out of the vehicle, Wisdom braced himself on the side of the jeep, closed the door and walked to the rear. Neal then asked Wisdom to perform three standardized sobriety tests to determine whether he was intoxicated to the point of being impaired.

The first test was the horizontal gaze nystagmus test (HGN) and Neal testified that Wisdom exhibited all of the six clues of intoxication. Next, Neal asked Wisdom to perform the one-leg stand test, but Wisdom refused to perform this test because he told the officer that he had a bad knee. Last, Neal asked Wisdom to perform the walk and turn test. During this test, Neal testified that Wisdom did not maintain a straight line, that he failed to touch heel to toe on all except three steps, and that he exhibited two clues on the test.

After conducting the two tests, Neal concluded that Wisdom was intoxicated and placed him under arrest for DWI. Neal testified that in his opinion Wisdom had lost the normal use of his mental faculties because he had poor judgment in relationship to speed, distance, and his maneuverability of the vehicle. Wisdom was then transported to jail where Officer Mark Gibbons asked him to perform additional field sobriety tests. Wisdom refused to do these tests.

At trial, the only element of DWI Wisdom contested was the element of intoxication. He attacked Neal's assessment of his intoxication by testifying that his "strong odor of alcohol" was due to only a few beers consumed with an earlier meal, that his red, watery eyes were due to sinus problems, and that his unsteady balance was due to the roadway. Furthermore, Wisdom argued that the field sobriety tests were poorly done and improperly

administered, and thus there was no evidence of intoxication.

ISSUE ON APPEAL

Wisdom asserts that the trial court erred by admitting pages from a DWI Detection Manual[1] that included the National Highway Transportation Safety Administration's finding that there is a correlation between standardized sobriety test results and blood-alcohol concentration (BAC). He argues that the State was attempting to correlate the results of his performance on the sobriety tests to a precise blood-alcohol concentration as prohibited by the Court of Criminal Appeals in *Emerson. Emerson v. State,* 880 S.W.2d 759, 769 (Tex.Crim.App.1994). We disagree.

After the State rested, Wisdom requested permission to read selected portions of the DWI Detection Manual to the jury. He offered the manual as a public record published by the National Highway Traffic Safety Administration. The State then requested that pages seven through twelve be admitted into evidence in their entirety so that the jury could read the manual themselves. Wisdom objected, arguing that the remainder of those pages was inadmissible under *Emerson. See Emerson,* 880 S.W.2d at 769. The trial court sustained Wisdom's objections to several portions of the manual. However, the only objection made by Wisdom that the trial court overruled was his objection to section Q entitled "What did the researchers learn?" This section, which is found on page twelve, reads as follows:

The three standardized tests were found to be highly reliable in identifying subjects whose BACs were 0.10 or more. Considered independently, the nystagmus test was 77% accurate, the Walk-and–Turn, 68% accurate, and the One-Leg Stand, 65% accurate. However, Horizontal Gaze Nystagmus used in

combination with Walk–and–Turn was 80% accurate.

The importance of this large scale field evaluation study deserves to be emphasized. It was the first significant assessment of the "workability" of the standardized field sobriety tests under actual enforcement conditions, and it was the first time that completely objective clues and scoring criteria had been defined for the tests. The results of the study validated the SFSTs.

But it is also necessary to emphasize one final and major point. This validation applies *ONLY* WHEN THE TESTS ARE ADMINISTERED IN THE PRESCRIBED, STANDARDIZED MANNER; AND ONLY WHEN THE STANDARDIZED CLUES ARE USED TO ASSESS THE SUSPECT'S PERFORMANCE; AND, ONLY WHEN THE STANDARDIZED CRITERIA ARE EMPLOYED TO INTERPRET THAT PERFORMANCE.

IF ANY ONE OF THE STANDARDIZED FIELD SOBRIETY TEST ELEMENTS IS CHANGED, THE VALIDITY IS COMPROMISED.

Specifically, Wisdom objected to the following sentence, "The three standardized tests were found to be highly reliable in identifying subjects whose BACs were 0.10 or more." In a hearing outside the jury's presence, the State asserted that pages seven through twelve were admissible in their entirety under the rule of optional completeness. TEX.R. EVID. 107. The trial court agreed and allowed the State to admit the pages, after redacting three sentences.

The trial court redacted the following statement regarding the HGN test: "If a suspect exhibits four or more clues, it should be considered evidence that the suspect's BAC is above 0.10." The court removed the same language as it related to the one-leg-stand and the walk-and-turn

1. US Department of Transportation DWI Detection of Standardized Field Sobriety Testing Student Manual (1995) which was published by the National Highway Transportation Safety Administration (NHTSA).

test. Other than those three statements, pages seven through twelve of the manual were admitted in their entirety, including the general statement regarding the correlation between general test results and blood-alcohol concentration.

In *Emerson,* the Court of Criminal Appeals stated that an officer qualified as an expert on the administration and technique of the horizontal gaze nystagmus test could testify concerning a defendant's performance on the HGN test but could not correlate the defendant's performance on the test to a precise BAC. *Emerson v. State,* 880 S.W.2d 759, 769 (Tex.Crim.App. 1994). In other words, an officer trained to administer the standardized sobriety tests may opine that a defendant was under the influence of alcohol, but he or she may not testify to that defendant's exact BAC. *Id.* at 769–770.

There was no effort made by the State at any stage of the proceeding to correlate Wisdom's test results with a specific BAC. The indictment does not allege that Wisdom was intoxicated by having a blood-alcohol concentration in excess of .10.[2] Officer Neal did not attempt to quantify Wisdom's exact BAC based on his performance on the field sobriety tests. The State did not mention blood-alcohol concentration during any other witness's testimony or in closing argument. The jury was charged with determining only whether Wisdom was intoxicated by the introduction of alcohol into his body and not whether he was intoxicated by having a blood-alcohol concentration in excess of the legal limit. The admission of the statement from the DWI Detection Manual was not an attempt to correlate the results of the test with a specific BAC for Wisdom. Thus, *Emerson* does not apply here.

Here, Wisdom offered only the portions of the DWI Detection Manual em-phasizing that following the correct procedure was critical to the validity of the tests which left the jury with only part of the information needed to make a fair assessment of the officer's reliance on the test results. Upon the State's request, the trial court admitted the entirety of those pages, except for three redacted statements, on the basis of the rule of optional completeness. Tex.R. Evid. 107. This rule was designed to guard against "the possibility of confusion, distortion, or false impression that could arise from the use of an act, writing, conversation, declaration, or transaction out of proper context." *Livingston v. State,* 739 S.W.2d 311, 331 (Tex.Crim.App.1987).

As such, the jury was entitled to know all of the relevant information regarding the validity of the tests, both as to factors that could invalidate the results as well as the reliability of the tests if done correctly. By the plain language of the rule, when part of a writing is placed into evidence by one party, the other party can put the remainder of the writing into evidence to explain the prior writing or otherwise make it fully understood. Tex.R. Evid. 107. The standard of review for a trial court's ruling on the admissibility of evidence is an abuse of discretion. *Angleton v. State,* 971 S.W.2d 65, 67 (Tex.Crim. App.1998). The trial court was within its discretion in determining that the manual, as redacted, was admissible. This issue is overruled.

## CONCLUSION

We overrule Wisdom's sole issue on appeal and affirm the judgment of the trial court.

---

**2.** The Legislature has amended the definition of intoxication to include persons with an alcohol concentration of 0.08 or more. *See* Act of May 28, 1999, 76th Leg., R.S., ch. 234, §§ 1(2)(B), 1999 Tex. Sess. Law Serv. 1082

(codified at Tex Pen.Code §§ 49.01). This definition does not apply to this case, however, as it did not become effective until September 1, 1999. *See id.*