David Allen LORENZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–02–00649–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 2, 2004.

Rehearing Overruled Jan. 5, 2005.

Discretionary Review Refused June 15, 2005.

Henry L. Burkholder III, Houston, TX, for Appellant.

Keisha L. Smith, Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney—Harris County, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, David Allen Lorenz, pleaded not guilty to the misdemeanor offense of driving while intoxicated (DWI). After a jury convicted appellant, the trial court assessed punishment at 180 days in jail, suspended, placed appellant on community supervision for one year, and imposed an $800 fine. In three issues, appellant contends that (1) the evidence is legally and factually insufficient to sustain his conviction and (2) the trial court erred by permitting the arresting officer to testify that three studies had found that the combination of field-sobriety tests administered to appellant were 91 to 95 percent accurate in determining that a person was intoxicated. We affirm.

## Background

Late at night on June 28, 2001, a deputy assigned as a patrol officer with the Harris County Precinct Four Constable's Office stopped a vehicle driven by appellant for speeding on West FM 1960. When the deputy approached appellant, he noticed that appellant's eyes were bloodshot, that his speech was slurred, and that he had a strong odor of an alcoholic beverage on his breath. Appellant admitted that he had consumed several beers earlier that night.

Appellant performed four field-sobriety tests as follows: (1) the Horizontal Gaze Nystagmus (HGN)[1] test, (2) the walk-and-turn test, (3) the one-leg-stand test and (4) the Rhomberg test. Appellant exhibited signs of intoxication on each of the tests. From appellant's performance on the field-sobriety tests, the deputy formed the opinion that appellant had lost the normal use of his mental and physical faculties, by reason of the introduction of alcohol into his body, and arrested appellant for DWI. At the police station, appellant refused to submit a breath sample into the intoxilizer instrument. Appellant also refused to perform any field-sobriety tests while recorded on videotape.

---

1. HGN is the involuntary jerking of the eyes in a side-to-side motion caused by the introduction of alcohol or drugs into the body.

At trial, appellant testified that he was not intoxicated, but he acknowledged having consumed portions of three alcoholic beverages. Appellant's employee, who accompanied appellant that evening, also testified that appellant had not lost the normal use of his mental and physical faculties.

### Sufficiency of the Evidence

■ Appellant's second and third points of error challenge the legal and factual sufficiency of the evidence to support his conviction for DWI. Appellant contends that the evidence is insufficient to establish that he had lost the normal use of his mental or physical faculties.

■ In assessing legal sufficiency, we determine whether, based on all of the record evidence, viewed in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App.2003). In conducting our review of the legal sufficiency of the evidence, we do not reevaluate the weight and credibility of the evidence, but only ensure that the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993).

■ In a factual-sufficiency review, we view all the evidence in a neutral light and will set aside the verdict only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla v. State,* 143 S.W.3d 814, 817 (Tex.Crim.App.2004). In conducting a factual-sufficiency review, we must discuss the evidence that appellant contends most undermines the jury's verdict. *See Sims v.*

*State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003). Unless the available record clearly reveals that a different result is appropriate, an appellate court conducting a factual-sufficiency review must defer to the jury's determination concerning what weight to give conflicting testimony because resolution often turns on evaluation of credibility and demeanor. *Johnson v. State,* 23 S.W.3d 1, 8 (Tex.Crim.App.2000).

To prove appellant guilty of the offense of DWI, the State was required to establish beyond a reasonable doubt that he did not have the normal use of his mental or physical faculties while he operated a motor vehicle in a public place. TEX. PEN. CODE ANN. §§ 49.01(2)(A), 49.04(a) (Vernon 2003). Appellant contends that the evidence is legally and factually insufficient because (1) he did not operate his vehicle in a manner that suggested he was intoxicated, (2) he had no physical, motor difficulty producing his driver's license and proof of insurance, (3) he had no trouble understanding each of the field-sobriety tests that the deputy asked him to perform, (4) he did not appear impaired on the videotape shown to the jury, and (5) the sole testimony of his intoxication came from the arresting officer.

The record shows that appellant exhibited the following: (1) bloodshot eyes; (2) slurred speech; and (3) a strong odor of an alcoholic beverage on his breath. In addition, appellant acknowledged that he had consumed portions of three alcoholic beverages within an hour and 15 minutes. From the officer's descriptions of appellant's performance on the four field-sobriety tests, the jury learned that appellant (1) had six clues on the HGN; (2) put his foot down three times, swayed three times, and raised his arms for balance twice during the one-leg-stand test; (3) missed stepping heel-to-toe seven times, raised his arms for balance four times, could not

keep his balance during the instructions phase, and turned in the wrong direction during the walk-and-turn test; and (4) estimated 18 seconds for 30 seconds and exhibited a one-to-two-inch circular sway while he attempted to balance during the Rhomberg test. The officer testified that, in his opinion, based on appellant's performance on the field-sobriety tests, appellant had lost the normal use of his mental and physical faculties.

Viewed in the light most favorable to the verdict, a rational jury could have found that appellant had lost the normal use of his mental and physical faculties, based on having introduced alcohol into his body, and that the State proved the essential elements of the offense beyond a reasonable doubt. *See Jackson,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89; *Swearingen,* 101 S.W.3d at 95. The evidence is therefore legally sufficient to sustain appellant's conviction for DWI.

We also conclude that the evidence is not so weak that the verdict is clearly wrong and manifestly unjust; likewise, the contrary evidence, consisting of the testimony of appellant and his employee, is not so strong that the standard of proof beyond a reasonable doubt could not have been met. *See Escamilla,* 143 S.W.3d at 817. Because the available record here does not clearly reveal that a different result is appropriate, we must defer to the jury's determination about what weight to give conflicting testimony concerning evidence of appellant's intoxication because resolution turns on evaluation of the witnesses' credibility and demeanor. *See Johnson,* 23 S.W.3d at 8. We hold that the evidence is factually sufficient to sustain the conviction.

We overrule appellant's second and third points of error.

## Evidence of Defendant's Specific Blood Alcohol Content

■ In his first point of error, appellant contends that the trial court committed harmful, reversible error by permitting the arresting officer to testify that the combination of field-sobriety tests administered to appellant, "including the HGN test, had been determined by experts to be highly reliable, where such a conclusion was not justified, and therefore the testimony [was] inadmissible under rule 702 of the Texas Rules of Evidence." [2] Appellant's specific complaint concerns the officer's testimony that three studies had found that the three field-sobriety tests conducted on appellant—the HGN, the one-leg stand, and the walk-and-turn test—were 91 to 95 percent "accurate" when used in conjunction with each other. Appellant asserts that, by mentioning the HGN test as part of the field-sobriety tests that he performed on appellant, the arresting officer was in effect testifying that the HGN test "correlated to a particular intoxication level" in violation of *Emerson v. State,* 880 S.W.2d 759, 769 (Tex.Crim.App.1994).

■ We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard, and will not reverse the ruling unless it falls outside the zone of reasonable disagreement. *Torres v. State,* 71 S.W.3d 758, 760 (Tex. Crim.App.2002).

■ A peace officer may not correlate a defendant's blood alcohol content (BAC) with the defendant's performance on field-sobriety tests. *Emerson,* 880 S.W.2d at

---

**2.** Rule 702 of the Rules of Evidence states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex.R. Evid. 702.

769 (holding peace officer may not correlate defendant's performance on HGN test to precise (BAC); *Webster v. State,* 26 S.W.3d 717, 723 (Tex.App.-Waco 2000, pet. ref'd) (holding that testimony that 75 percent of subjects who have four clues on HGN test would have BAC over .10 was impermissible attempt to estimate Webster's BAC on basis of HGN-test results); *Smith v. State,* 65 S.W.3d 332, 345–48 (Tex.App.-Waco 2001, no pet.) (holding that trial court erred by allowing peace officer to testify that (1) defendant who had four clues on HGN would have BAC over .08 percent, (2) when person has two or more clues on one-leg-stand test, that test is 83 percent accurate in showing that person would have BAC of .08 or higher, (3)when person has two or more clues on walk-and-turn test, that test is 79 percent accurate in showing that person would have BAC of .08 or higher). In short, a peace officer may give qualitative, but not quantitative, results from field-sobriety tests. *Youens v. State,* 988 S.W.2d 404, 406 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (citing *Emerson,* 880 S.W.2d at 769) (referring to HGN test)).

The question before this court is whether testimony that field-sobriety tests are 91 to 95 percent accurate impermissibly correlates to a defendant's quantitative BAC. Under the circumstances presented here, we conclude that it does not.

The trial court's instructions to the jury defined "intoxication" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body." The jury was not instructed that Texas also defines intoxication as having a BAC of 0.08 or above, and appellant was not charged with having a BAC above the legal limit. The jury learned only that appellant refused to submit a breath sample into the intoxilizer. No evidence was introduced to explain that the

intoxilizer is used to quantify a person's BAC. The only evidence arguably relating to BAC came from the officer's testimony that appellant did not have a high concentration of alcohol according to the vertical nystagmus test. But here, too, no evidence addressed appellant's precise BAC.

Following a hearing conducted outside the presence of the jury, the trial court ruled that the arresting officer could not testify about appellant's specific BAC, but would be allowed to discuss the statistical evidence. The arresting officer's testimony outside the presence of the jury impliedly correlated appellant's exhibiting signs of intoxication on the three field-sobriety tests with a BAC above the legal limit. Outside the presence of the jury, the officer explained that three studies showed that 91 to 95 out of 100 people who appeared intoxicated on the HGN, walk-and-turn, and one-leg-stand field-sobriety tests had a BAC above the legal limit. The officer further acknowledged, outside the presence of the jury, that each of the three non-Texas studies "related to a group of individuals who comply with those three tests, based their evaluations of those three tests, ... *that percentage of a group would be above the legal per se law for that state.*" Because the deputy's testimony outside the presence of the jury effectively quantified appellant's BAC to be above the legal limit, the trial court correctly ruled that the arresting officer would not be allowed to correlate appellant's performance on field-sobriety tests with his BAC. *See Emerson,* 880 S.W.2d at 769; *See Webster,* 26 S.W.3d at 723; *See Smith,* 65 S.W.3d at 345–48. By excluding all references to BAC, the trial court ensured that the jury received very limited information concerning the studies. The arresting officer gave the following testimony concerning the reliability of the field-sobriety tests before the jury:

State's attorney: And it is the NHTSA manual that you apply in your daily practice with field-sobriety tests?

Witness: Yes. Sir.

State's attorney: And are you familiar with any validation studies concerning the field-sobriety tests?

Witness: Yes. Sir.

State's attorney: And could you tell the jury what the percentage of reliability factors are that you are aware of?

Witness: The three studies were made, one in 1995, made in Colorado, 1996 made in Florida, 1997 made in San Diego, California. The study made in Colorado shows utilizing the HGN or horizontal gaze nystagmus test, one leg stand test and walk and turn test in conjunction to be 93 percent accurate. The Florida test, using all three tests again, showed to be 95 percent accurate. The San Diego, California studies showed to be 91 percent accurate.

The trial court's order, which precluded the State from mentioning appellant's BAC or that the studies involved testing the subject's BAC to determine if the field sobriety tests were "accurate," properly removed from the jury all references to BAC. We cannot conclude, therefore, that the trial court erred by allowing the statistical evidence on the grounds that it conveyed appellant's specific BAC to the jury in violation of *Emerson*. *See Wisdom v. State*, 39 S.W.3d 320, 322–23 (Tex.App.-

Waco 2001, no pet.) (holding that evidence from DWI Detection Manual, stating that HGN used in conjunction with walk-and-turn test was 80 percent accurate, as well as other statistics concerning reliability of field sobriety tests, were admissible under rule of optional completeness under circumstances demonstrating that appellant offered other portions of manual into evidence). Because no references to BAC were made at appellant's trial, we hold that the testimony that field-sobriety tests are over 90 percent reliable did not convey the defendant's specific BAC to the jury.[3]

### Conclusion

We affirm the judgment of the trial court.

3. Although appellant's attorney asserted, at trial, that the peace officer was not qualified to discuss the studies or to give testimony concerning the reliability of the field-sobriety tests, appellant has not briefed or argued that issue on appeal. Appellant's point of error states generally that the expert's "conclusion was not justified" and was thus inadmissible under Rule 702. Appellant's entire analysis within the point of error focuses on the *Emerson* complaint discussed above. Thus, we decline to address the broader issue whether the

officer was qualified to discuss the studies or whether the studies themselves were reliable. Additionally, appellant has not asserted in this appeal that the statistical evidence was irrelevant because "accuracy" in the field-sobriety tests was determined by subjects having blood alcohol contents above the legal limit, as opposed to subjects who had lost the normal use of their mental or physical faculties, such as appellant. We leave those issue for another day.