Affirmed and Memorandum Opinion filed March 30, 2006









Affirmed
and Memorandum Opinion filed March 30, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00729-CR

____________

 

LEE WEST ADAMS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 1,211,100

 



 

M E M O R A N D U M    O P I N I O N

A trial court convicted appellant Lee West
Adams of driving while intoxicated (ADWI@), sentenced her
to 180 days in jail, and fined her $300.00. 
The trial court suspended the sentence and placed appellant on community
supervision for nine months.  In her sole
issue on appeal, she contends the evidence is factually insufficient to support
her conviction.  We affirm.

I.  Factual and Procedural Background








On December 25, 2003 at approximately
11:45 p.m., appellant was stopped by Officer C.D. Allen of the Houston Police
Department=s DWI task force while driving her vehicle
on Westheimer Road in Houston=s Galleria
neighborhood.  After a brief conversation
with appellant, Allen asked her to submit to the horizontal gaze nystagmus
test, and she agreed to do so.  He also
administered a Amodified A-B-C=s@ test.  Following the tests, Allen asked appellant
about her alcohol consumption that evening. 
Appellant was subsequently taken into custody and transported to Houston=s central
intoxication facility, where she refused to provide a breath sample and also
refused to undergo additional videotaped sobriety tests.  After a bench trial, appellant was found
guilty of driving while intoxicated.

II.  Issue Presented

In a single issue, appellant argues the
evidence presented to the trial court is factually insufficient because the overwhelming weight of the evidence
established that appellant had not lost the normal use of her mental or
physical faculties.  Specifically,
appellant argues that Aother witnesses who had been with
appellant for a much longer period of time that evening established she was not
intoxicated.@ 
Appellant points out that these witnesses included Awell-known, reputable, and credible
attorneys,@ and a medical doctor and asserts
that their combined testimony greatly outweighed that of Officer Allen. 

III. 
Discussion

A.        Standard of
Review            








In reviewing the evidence for factual sufficiency, we ask
only one question: Considering all the evidence in a neutral light, was the
fact finder rationally justified in finding guilt beyond a reasonable
doubt?  Zuniga v. State, 144
S.W.3d 477, 484  (Tex. Crim. App.
2004).  There are two ways the evidence
may be factually insufficient: (1) the evidence supporting the verdict, if
taken alone, is too weak to sustain the finding of guilt beyond a reasonable
doubt, or (2) the contrary evidence is so strong that the State could not have
met its burden of proof beyond a reasonable doubt.  Id. at 484B85. In our evaluation of the
evidence, we must be deferential to the findings of the fact-finder and resist
intruding on its role as the sole judge of the witnesses= credibility and of the weight to be
given to the evidence.  Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc).  In a bench trial, the court acts as the
fact-finder.  Joseph v. State, 897
S.W.2d 374, 376 (Tex. Crim. App. 1995) (en banc).  Our standard of review remains the same
whether the evidence we consider is direct or circumstantial.  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986) (en banc).  

B.        Analysis

To sustain a conviction for driving while intoxicated, the
State must offer evidence to prove beyond a reasonable doubt that appellant was
intoxicated while operating a motor vehicle in a public place.  Tex.
Pen. Code ' 49.04(a) (West 2005). 
AIntoxicated@ is defined as: 

(A) Not having the normal use of mental or physical
faculties by reason of the introduction of alcohol, a controlled substance, a
drug, a dangerous drug, a combination of two or more of those substances, or any
other substance into the body; or

(B) Having an alcohol concentration of 0.08 or more.

' 49.01(2).  Appellant does not dispute that she was
operating a motor vehicle in a public place at the time she was detained.  Moreover, appellant did not agree to any
scientific means of determining her level of intoxication.   Accordingly, our inquiry focuses solely on
the evidence addressing appellant=s consumption of alcohol to the
extent that she lost the normal use of her mental or physical faculties.

1.         State=s Evidence of Intoxication

The State=s evidence of appellant=s intoxication came from the
testimony of Officer Allen and also from the videotape of appellant=s detention and arrest.  Allen testified he became suspicious of
appellant when he observed her vehicle swerving in and out of the lane in which it
was traveling.  He stated he decided to
signal that she pull over her vehicle when she stopped her vehicle in the
middle of a crosswalk.  Both Allen=s testimony and
the videotape demonstrate that appellant continued to proceed for several
blocks after Allen turned on his vehicle=s emergency
lights, and that appellant did not stop until Allen activated his siren.








Allen testified he detected a Astrong odor of an alcoholic
beverage@ after his initial conversation with
appellant.  He also observed she had red,
bloodshot eyes, and noticed she was speaking in a slow and slurred manner.  Allen testified appellant=s performance on the horizontal
gaze nystagmus (AHGN@) test provided him with six clues
that she was intoxicated.[1]  He also testified that she swayed in a
front-to-back motion while performing the HGN test.  When Allen asked appellant to recite the
alphabet from AG@ to AX,@ 
appellant began at AG@ but failed to stop at the letter AX@ as she was instructed.  The videotape corroborates Allen=s testimony that appellant gave
widely inconsistent statements of what she had been drinking and the times at
which she consumed the beverages. 
Additionally, the video evidences the following dialogue immediately prior
to appellant=s arrest:

APPELLANT:            I=m not
going to tell you that I=m absolutely 100 percent okay.

ALLEN:                      Why wouldn=t you be
100 percent okay?

APPELLANT:            Because
I=m not.

ALLEN:                      How come you=re not?

APPELLANT:            Because I=ve had a few drinks.

ALLEN:                      Do you think you=re
intoxicated right now?

APPELLANT:            A little bit.

ALLEN:                      Well, how much is a little bit?

APPELLANT:            A little bit.

ALLEN:                      Well,
I mean, at whatCwhat do you consider to be intoxicated?

APPELLANT:            What do you consider to be
intoxicated?

ALLEN:                      Loss of the normal use of your mental or
physical faculties.  Or, to have a
blood-alcohol concentration of .08 or greater.

APPELLANT:            It would probably be greater.








ALLEN:                      You think your blood-alcohol would be greater?

APPELLANT:            I would assume so considering I
probably have a small frameC

ALLEN:                      Yes.

APPELLANT:            And just a little bit would probably
make that greater.

ALLEN:                      Is it a wise decision to drive if you think you=re above the legal limit?

APPELLANT:            Well, I think it would probably beCnot a wise decision, but I=m headed to some place and I=m going to be there for the night.

ALLEN:                      That=s not
the question I asked you.  I asked you do
you think it=s a wise decision to even drive, whether it be one
block or ten blocks.  If you thinkCif you already think you=re above
the legal limit, do you think it=s a wise
decision to get out here and drive?

APPELLANT:            Probably not.

 

Following this conversation, appellant refused to undergo
additional field sobriety tests, and was then placed under arrest.

2.       Appellant=s Contrary
Evidence 

At trial,
appellant took the stand in her own defense. 
She testified she had been very sick with a cold on the day of her
arrest, and, despite having stayed up late on the previous evening wrapping
gifts, she was up early the next morning to celebrate Christmas with her
family.  She went on to say she spent the
evening visiting her father and stepmother from about 5:00 p.m. to 8:00 p.m.,
and then attended a friend=s party from
approximately 8:30 p.m. to 11:30 p.m. 
Appellant claimed the only alcoholic beverages she consumed that day
were part of one glass of wine at her parents= home, and a glass
of wine and a small glass of vodka at the party.  








Appellant also testified about the
circumstances surrounding her arrest. 
She stated her car=s swerving motions were caused by her effort to make calls on
her cell phone while also attempting to untangle the cords to her phone charger
and headset.  She justified her
inconsistent statements as to what and when she was drinking by stating, AI did not stop and look at my watch
every time I either got in the car or . . . took a sip of something or . . .
transported myself from one place to the other.@ 
Finally, she explained she told Adams she had Aa lot@ to drink because she was Areferring to . . . different forms
[of alcohol] to drink, not as in quantity . . . because there had been
different things that I had drank at different points . . . and at different
places.@

Appellant=s testimony was
corroborated by five witnesses.  Her
stepmother, Linda West, testified appellant had only one glass of wine with
dinner.  West also testified that through
her work, she was very familiar with Texas= definition of
intoxicated, and that in West=s opinion,
appellant had not lost the normal use of her mental and physical faculties when
she left their home.  Appellant=s claim that she
drank only one glass of wine at the party was supported by the testimony of
Charlie Davidson, an attorney; Kelly Sigler, an attorney and the co-host of the party; Kelly=s husband and co-host Sam Sigler, a
physician who also has a law degree; and Gregory Nassar, appellant=s boyfriend.  Although Davidson left the party before
appellant, he stated he had Ano doubt@ appellant was not intoxicated.  Kelly and Sam Sigler, both of whom indicated
their familiarity with Texas law, testified that in their opinion, appellant
was not legally intoxicated at the time she left the party.  

In her brief, appellant also directs
us to testimony elicited on cross-examination regarding the motivation of the
DWI task force officer:

Q:        Now, as a prosecutor, would you place more relevance in the
opinion of a DWI task force officer . . . as opposed to the opinion of a friend
or someone who was with the defendant at the time, at a party, as to the issue
of whether or not that person had lost her normal use of her mental and
physical faculties?

A:        It would depend on the motivation of each of them, the friend
and the cop.

Q:        Okay.  And if the cop=s motive were to remove people who were not driving
safely, to stop them and determine whether or not they were intoxicated, if
there were no other motive involved, then would you rely on his opinion as to
intoxication?








A:        Well, I think you would also have to factor in the fact that
the DWI task force guys are very gung-ho. 
Put that in the pot and put that motivation in there . . . we are all
going to believe the cops first and best and most, but we are talking about DWI
task force gung-ho cops.

In a factual sufficiency review, we are required to consider
the most important evidence the appellant claims undermines the fact-finder=s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  The testimony at
issue, however, is unrelated to the State=s evidence on the
issue of intoxication; its only value is to place Allen=s credibility at
issue.  As stated above, we do not
re-assess the weight given to the credibility of the evidence by the
fact-finder in a factual sufficiency review. 
Johnson v.
State, 23 S.W.3d at
7.

After viewing all of the evidence in
a neutral light, we conclude the trial court was rationally justified in
finding guilt beyond a reasonable doubt. 
Allen=s testimony and appellant=s own statements on the videotape are
not so contrary to the overwhelming weight of the evidence to require a
reversal.  See Lorenz v. State,
176 S.W.3d 492, 495B96 (Tex. App.CHouston [1st Dist.] 2004, pet. ref=d) (holding evidence of bloodshot
eyes, slurred speech, a strong odor of an alcoholic beverage, six clues on the
horizontal gaze nystagmus test, and appellant=s own admission of some alcohol
consumption factually sufficient to support DWI conviction).  Accordingly, we affirm the judgment of the
trial court.

 

 

 

/s/        Eva M. Guzman

Justice

 

Judgment
rendered and Memorandum Opinion filed March 30, 2006.

Panel
consists of Justice Fowler, Edelman, and Guzman.

Do
Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  When
conducting the HGN test, the officer looks for three criteria: (1) an inability
to pursue smoothly an object, or stimulus, moving sideways across the suspect=s field of vision; (2) distinct, or pronounced, nystagmus
at the eye=s maximum horizontal deviation; and (3) an angle of
onset of nystagmus of less than or equal to forty-five degrees.  Emerson v. State, 880 S.W.2d 759, 766
(Tex. Crim. App. 1994) (en banc).  These
three criteria in each eye provide for a total of six clues.  Id. 
If an officer identifies four or more clues, then the officer classifies
the suspect as intoxicated.  Id.