

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00224-CR

Michael H. **COX**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 6, Bexar County, Texas
Trial Court No. 303616
Honorable Bill C. White, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:       Karen Angelini, Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:   May 1, 2013

AFFIRMED

A jury convicted Michael H. Cox of driving while intoxicated as a first offense, a class B misdemeanor. In two issues, Cox argues the evidence was legally insufficient to sustain the jury's verdict and he was denied effective assistance of counsel. We affirm.

### SUFFICIENCY OF THE EVIDENCE

In his first issue, Cox argues the evidence was legally insufficient to sustain the jury's verdict. The legal sufficiency standard has been characterized as "[c]onsidering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt

beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In applying this standard, we are required to defer to the jury's credibility and weight determinations. *See id.* at 899–900. A person commits the offense of driving while intoxicated if that person is intoxicated while operating a vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2012). As applied to this case, "intoxicated" means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol…into the body." TEX. PENAL CODE ANN. § 49.01 (2)(A) (West 2011).

The State called only one witness to testify at trial: Eluterio Rendon, who was an officer employed by the San Antonio Police Department (SAPD). Rendon testified he was on patrol on U.S. Highway 281 in Bexar County, Texas, on September 29, 2009. Another SAPD officer was accompanying him. At around 2:30 a.m., Rendon noticed a vehicle traveling 84 miles per hour on a stretch of highway where the speed limit is 65 miles per hour. Rendon activated his patrol car's emergency lights to initiate a traffic stop. The driver in the vehicle responded by pulling onto the right-hand shoulder of the highway and stopping. However, the shoulder area at this juncture was somewhat narrow and the vehicle was partially blocking the exit lane. Because the location where the vehicle pulled over was unsafe, Rendon used the intercom system in his patrol car to instruct the driver to exit the highway and pull over. According to Rendon, the driver's choice of location indicated to him that the driver's mental judgment was impaired.

After the driver exited the highway and parked in a parking lot, Rendon walked up to the driver's side window of the vehicle. Once there, Rendon immediately detected the strong odor of an alcoholic beverage coming from inside the vehicle and noticed the driver "had a flushed, sluggish look on him." When Rendon asked the driver for his driver's license and insurance card, the driver fumbled with the paperwork in his car. Rendon had to remind the driver to present his

driver's license, which the driver was holding in his hand. Rendon then asked the driver to exit the vehicle. The driver, who was identified as Cox, exited the vehicle with a slow, hesitant walk. Cox told Rendon he was coming from a restaurant or bar near downtown. Cox stated he had consumed three or four 12-ounce Miller Light beers that night. Later, Cox indicated that he had had "other things to drink" as well.

Rendon, who was certified to administer standardized field sobriety tests, administered three standardized field sobriety tests to Cox: the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg stand test. First, Rendon administered the HGN test to Cox. The HGN test requires the officer administering the test to observe the driver's eyes. Normally, the HGN test is administered to the driver while the driver is standing. However, because Cox was significantly taller than Rendon, Rendon directed Cox sit on the front bumper of the patrol car. In response to the HGN test, Rendon observed that Cox exhibited six clues. According to the National Highway Traffic Safety Administration (NHTSA), the minimum number of clues required to indicate intoxication is four. Second, Rendon administered the walk-and-turn test to Cox. In response to the walk-and-turn test, Rendon observed that Cox exhibited four clues. According to the NHTSA, the minimum number of clues required to indicate intoxication is two. Finally, Rendon administered the one-leg stand test to Cox. In response to the one-leg stand test, Rendon observed that Cox exhibited four clues. According to the NHTSA, the minimum number of minimum number of clues required to indicate intoxication is two. Based on Cox's performance on the standardized field sobriety tests, Rendon believed Cox had lost the normal use of his mental and physical faculties. Additionally, Rendon administered another non-standardized test. Rendon asked Cox to recite the alphabet. Although Cox was able to recite the alphabet, Rendon noticed that his speech was slurred during the recitation. Based on all of the information before him, Rendon arrested Cox for driving while intoxicated.

Next, Rendon read Cox a document containing statutory warnings. The document informed Cox that his refusal to give a specimen of his breath or blood might be admissible in a subsequent prosecution. Rendon then transported Cox to the jail. Rendon asked Cox to provide a breath specimen and Cox refused. Cox signed the statutory warning document to reflect his refusal to provide a breath specimen. Rendon believed that by refusing to provide a breath specimen, Cox was trying to hide evidence of his intoxication.

Rendon's patrol car was equipped with a videotape recorder on the night of Cox's arrest. The entire encounter between Cox and Rendon was recorded by the videotape recorder in Rendon's patrol car.

The State presented two additional items of evidence at trial: the videotape of the encounter between Cox and Rendon, and the document containing the statutory warnings signed by Cox.

The defense did not present any witnesses or offer any other evidence.

On appeal, Cox argues no rational jury could have found him guilty beyond a reasonable doubt. Most of Cox's argument consists of a discussion of the trial evidence viewed in the light most favorable to him. However, the applicable standard of review requires us to consider the evidence in the light most favorable to the verdict. Moreover, we are obligated to defer to the jury's credibility and weight determinations. If the jury believed Rendon's testimony, as it obviously did, the evidence was legally sufficient to establish that Cox operated a motor vehicle while intoxicated.

Next, Cox argues the evidence is insufficient to support the jury's verdict because speeding is not an indicator of intoxication according to the NHTSA.[1] Texas courts, however,

---

[1] For this proposition, Cox cites Albert Reeder et al., *Texas DWI Detection and Standardized Field Sobriety Testing Program* (Revised 2001).

have concluded speeding can indicate that an individual has impaired mental judgment. *See Texas Dept. of Public Safety v. Gilfeather*, 293 S.W.3d 875, 880 (Tex. App.—Fort Worth 2009, no pet.). Moreover, in this case there were many other factors the jury could have considered as evidence of intoxication—Cox's appearance and behavior, the odor of an alcoholic beverage emanating from the vehicle, Cox's performance on the field sobriety tests, Cox's statements admitting he had consumed alcoholic beverages, and Cox's refusal to provide a breath sample. *See Russell v. State*, 290 S.W.3d 387, 397 (Tex. App.—Beaumont 2009, no pet.) (recognizing that the jury may have inferred from the defendant's refusal to take a breath test that the defendant believed he was intoxicated).

Finally, Cox argues the results of the HGN test had no probative value because the test was administered while he was in a seated position. We disagree. Texas courts have held that, although slight variations in the administration of the HGN test may affect the weight to be given to HGN testing evidence, they do not render the evidence inadmissible or unreliable. *See Kamen v. State*, 305 S.W.3d 192, 196–97 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Plouff v. State*, 192 S.W.3d 213, 220–21 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Compton v. State*, 120 S.W.3d 375, 378–79 (Tex. App.—Texarkana 2003, pet. ref'd).

Viewing the evidence in the proper light, we conclude the jury was rationally justified in finding Cox guilty, beyond a reasonable doubt, of the offense of driving while intoxicated. Cox's first issue is overruled.

### EFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Cox argues he was denied effective assistance of trial counsel. To prevail on this issue, Cox must prove, by a preponderance of evidence, that: (1) counsel's performance was deficient, *i.e.*, counsel's assistance fell below an objective standard of reasonableness; and (2) Cox was prejudiced, *i.e.*, a reasonable probability that but for counsel's

unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

### 1. Deficient Performance

To establish the first part of the *Strickland* standard, Cox cites (1) testimony trial counsel elicited on field sobriety tests; (2) trial counsel's lack of understanding of the law; (3) trial counsel's lack of preparedness for trial; and (4) trial counsel's opening statement and closing argument. In evaluating the effectiveness of counsel, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. We do not look at isolated acts or omissions to evaluate the effectiveness of counsel *Id*. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. To defeat the presumption of reasonable professional assistance, an allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id*. at 814. Absent record evidence to the contrary, we must presume that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. at 813–14.

Cox first claims trial counsel was ineffective when he elicited testimony from the arresting officer on the validity of standardized field sobriety tests. Cox maintains trial counsel's representation fell below an objective standard of reasonableness based on *Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994). In *Emerson*, the Court of Criminal Appeals stated, "A witness qualified as an expert on the administration and technique of the HGN test may testify concerning a defendant's performance on the HGN test, but may not correlate the defendant's performance on the HGN to a precise BAC [blood-alcohol concentration]." *Id*. The Court further concluded that the expert in that case did not attempt to quantify the defendant's exact blood-

alcohol level based on her performance on the HGN test. *Id.*; *see Burkett v. State*, 179 S.W.3d 18, 34 (Tex. App.—San Antonio 2005, no pet.) (holding expert's testimony was an impermissible attempt to estimate the defendant's blood alcohol level but concluding the error was harmless).

The record in this case shows trial counsel elicited testimony from Rendon, the arresting officer, concerning the effectiveness of standardized field sobriety tests. Specifically, Rendon agreed during cross-examination that studies showed that 5 to 9% of the drivers who failed standardized field sobriety tests did not have blood alcohol levels over the legal limit. Rendon further agreed during cross-examination that studies showed that standardized field sobriety tests were only 91% effective. Thus, contrary to Cox's claim, trial counsel did not elicit impermissible testimony attempting to estimate Cox's blood-alcohol concentration based on the results of the standardized field sobriety tests. *See Lorenz v. State*, 176 S.W.3d 492, 497 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (concluding that testimony that field sobriety tests are 91 to 95 percent accurate did not convey to the jury the defendant's specific blood-alcohol concentration).

Cox next claims trial counsel was ineffective because he lacked understanding of this area of criminal law. To support this claim, Cox points to one instance in the record in which trial counsel failed to state the proper abbreviations for the manual used to train officers. We fail to see how this isolated incident demonstrates that trial counsel lacked an understanding of the law.

Cox further claims trial counsel was ineffective because he was not prepared for trial. Here, Cox points to two incidents. First, Cox cites to trial counsel's reaction when the State rested after presenting only one witness. Trial counsel stated: "Yeah, we rest too. I'm sorry. I wasn't ready for that. I'm sorry. I apologize to the court." Second, Cox cites to trial counsel's failure to challenge any of the prospective jurors for cause during voir dire. Trial counsel stated:

"I don't think any of them said anything that causes us the right to challenge." Cox does not explain in his brief which prospective jurors could have been challenged for cause and the basis for any such challenge. Again, we fail to see how these isolated incidents demonstrate that trial counsel was not prepared for trial.

Cox finally claims trial counsel was ineffective because of comments he made during opening statements and closing arguments. As to opening statements, Cox complains that trial counsel was ineffective because he told the jury it should be "tough on crime" during his opening statement. This phrase, however, was part of a broader statement: "I picked six people that are tough on crime. That's why you are on the jury…the evidence is going to show the police didn't do their job and that's going to mean something to you…" As to closing argument, Cox complains about trial counsel telling the jury that if it found his client guilty it should put the words "by policy" next to it. Cox further complains that trial counsel was ineffective because his closing argument was less than five minutes long and he never expressly asked the jury to find Cox "not guilty." Cox cites us to no authority showing that trial counsel's comments fell below an objective standard of reasonableness. And, as the reviewing court, we are not permitted to speculate about trial counsel's reasons for conducting opening statements and closing arguments as he did in this case. *See Hernandez v. State*, 198 S.W.3d 257, 270–71 (Tex. App.—San Antonio 2006, pet. ref'd) (stating that the appellate court may not speculate about the reasons for trial counsel's trial strategy). We conclude Cox has failed to overcome the presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance.

### 2. *Prejudice*

To establish the second part of the *Strickland* standard, Cox asserts that, given trial counsel's clear lack of understanding of the law, there can be no confidence in the outcome of his trial. However, as previously discussed, the record fails to demonstrate that trial counsel

exhibited a lack of understanding of the law. Cox further makes a broad assertion that trial counsel's deficient performance prejudiced his defense. Again, we disagree. The evidence in this case included the testimony of the arresting officer, the videotape, and Cox's written refusal to provide a breath specimen. Despite Cox's complaints about trial counsel's performance, this evidence would have been before the jury. We conclude Cox has failed to prove that, but for trial counsel's conduct, the results of the proceeding would have been different. Cox's second issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice

Do not publish