**Affirmed and Opinion filed November 24, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00933-CR

---

## BRIAN BUZBY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 1895414**

---

## O P I N I O N

Appellant Brian Buzby appeals from his conviction for driving while intoxicated (DWI). After a jury found appellant guilty, the trial court sentenced him to eight days in jail. In two issues on appeal, appellant contends that the trial court erred in making two evidentiary rulings: (1) excluding a toxicology expert's academic transcript and (2) permitting the arresting officer to correlate the results of appellant's "HGN" test with a specific blood alcohol content. We affirm.

## *Background*

Officer David Sokoloski of the Houston Police Department testified that on May 11, 2013, he was in his patrol car with his partner when he observed appellant appear to run a stop sign. The officers pulled appellant over and were soon joined by another officer, Margarito Perales. Perales has received specialized training in DWI investigation and was working with the HPD DWI task force that evening. He observed the traffic stop and stopped to see if the officers needed any assistance.

According to Perales, when he initially approached, he could smell alcohol on appellant and noticed appellant had glassy eyes and slurred speech. Appellant told Perales that he had been at a nearby bar and had drunk one beer about two hours before the traffic stop. Perales had appellant exit the vehicle and perform field sobriety tests. Perales described the test procedures and appellant's performance of the tests in detail. He further testified that appellant exhibited six out of six possible clues for intoxication on the horizontal gaze nystagmus (HGN) test,[1] three of four possible clues on the "one-leg stand" test and seven out of eight possible clues on the "walk and turn" test. Based on appellant's performance on the tests, Perales concluded that he was intoxicated and had lost the normal use of his physical and mental faculties. Perales arrested appellant for DWI and requested he perform a breath test or provide a blood sample, but appellant refused.

A video recording of the field sobriety testing taken from Perales's patrol car was played for the jury. Although some details of the testing are not discernable in the video, appellant can be heard missing a number and repeating a number when asked to count seconds. Additionally, he put his left foot in front of his right foot

---

[1] As will be explained in more detail below, Perales explained some of the specifics regarding how a person's performance of the HGN test relates to their likely intoxication.

when asked to do the reverse. He also was unable to walk a straight line and appeared unsteady at times both while walking and while standing still.

After a search warrant was issued to obtain a sample of appellant's blood, the sample was drawn and tested. A criminalist in the toxicology section of the Houston Forensic Science Center, testified that she analyzed appellant's blood sample and determined that his blood alcohol concentration (BAC) was 0.178—more than twice the legal limit of 0.08—at the time the sample was taken. Using retrograde extrapolation, the criminalist further determined that appellant's BAC would have been 0.195 to 0.230 at the time he was stopped.

The criminalist additionally testified regarding her educational and work history, including that she has a bachelor's of science degree from a major state university, had taken at least 30 hours of chemistry courses (as required to be a criminalist), and had previously worked as a lab supervisor and environmental quality control analyst. She further stated that she was then working on a master's degree and had testified in around eight other criminal prosecutions. She stated that the most important training for a chemist was that received in the particular lab in which the chemist was working. She acknowledged, however, that she had only been analyzing blood for about three weeks when she tested appellant's sample. Immediately before that time, she was in training and participated in setting up a new lab.[2]

The information in this case alleged that appellant "operate[d] a motor vehicle in a public place while intoxicated." The jury charge defined "intoxicated"

---

[2] When appellant attempted to introduce the criminalist's college transcript, the State objected on relevance grounds. In excluding the evidence, the trial judge remarked:

> The issue is did she take the required courses? Okay? And if she did, end of story. Now, if you're going to try to put it up there and say that she made a C in this course or a D in this course, I'm not going to let you put that on.

as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, or having an alcohol concentration of 0.08 or more." The information further alleged that at or near the time of the offense, appellant's BAC was at least 0.15. The jury found appellant guilty of DWI but declined to find him guilty of having a BAC of 0.15 or greater. The trial court sentenced appellant to eight days in jail, ordered him to pay a $2,000 fine, and suspended his driver's license for one year.

### *Expert's Academic Transcript*

In his first issue, appellant contends the trial court erred in excluding the criminalist's academic transcript from evidence. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm that decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Texas Rule of Evidence 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is generally admissible. *See* Tex. R. Evid. 402; *Erazo v. State*, 144 S.W.3d 487, 499 (Tex. Crim. App. 2004). Irrelevant evidence is inadmissible. Tex. R. Evid. 402. Under Rule 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. In conducting a rule 403 analysis, courts must balance: (1) the inherent probative force of the proffered evidence and (2) the proponent's need for that evidence, against (3) any tendency of the evidence to suggest decision on an

4

improper basis, (4) any tendency to confuse or distract the jury from the main issues, (5) any tendency to be given undue weight by the jury, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be cumulative of other evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Hedrick v. State*, No. 14-14-00378-CR, 2015 WL 4774365, at *3 (Tex. App.—Houston [14th Dist.] Aug. 13, 2015, no pet. h.).[3]

Although the criminalist's chemistry grades may have had some marginal relevance to issues in the case, we conclude that any such value was substantially outweighed by the dangers of confusing the issues, misleading the jury, and presenting needlessly cumulative evidence. The excluded transcript reveals that while in college, the criminalist took and passed 39 credit hours of chemistry classes, which was more than the 30 she said was required for her position. The transcript further shows that her chemistry grades were mostly Bs or B+s, but also included one A, several Cs or C+s, one D, and one F. Appellant suggests that this information would have been helpful for the jury in determining whether to accept Gooden's testimony and conclusions concerning her analysis of appellant's blood sample.

Appellant neither disputes that the criminalist was qualified nor suggests any specific improprieties occurred in connection with her testing of his blood in this case. Appellant's attempt to introduce her transcript sought to cast the vaguest of aspersions against the criminalist's ability to perform a routine blood analysis. The exhibit offers nothing specific regarding her performance of this particularly test or her conclusions based thereon. While not uniformly stellar, the criminalist's

---

[3] Although the trial court did not expressly conduct a Rule 403 balancing test in excluding the evidence, we will affirm a trial court's ruling on any theory of law applicable to the case, even if the trial court did not purport to rely on that theory. *See, e.g., State v. Esparza*, 413 S.W.3d 81, 85 (Tex. Crim. App. 2013).

chemistry grades were not particularly troubling. Under these circumstances, the relevance of the transcript to any issues in dispute in the case was marginal at best, and appellant's need for the evidence was minimal.

The criminalist testified in some detail regarding her qualifications and experience, including her degree, her course work in chemistry, her work toward a master's degree, and her prior work experience in the chemistry field. She further indicated that she was trained in the lab where she made her analysis and had helped set up the lab. Therefore, to the extent the transcript addressed the question of the criminalist's qualifications, it was largely duplicative of—and substantially less enlightening than—her own testimony. Additionally, admission of the transcript risked distracting the jury from more important issues, such as whether appellant's specific blood sample was properly taken and tested. Accordingly, we find that the trial court did not err in excluding the transcript because its probative value was substantially outweighed by its tendency to confuse the issues and mislead the jury and the fact it presented needlessly cumulative evidence. *See, e.g., Wiley v. State*, 74 S.W.3d 399, 408 (Tex. Crim. App. 2002) (holding marginally relevant, speculative evidence was properly excluded under Rule 403). We therefore overrule appellant's first issue.

### *Correlation of Test Results*

In his second issue, appellant contends that the trial court erred in permitting Officer Perales to correlate the results of appellant's performance on the "HGN" field sobriety test with a specific blood alcohol content. As stated, we consider the admission of evidence under an abuse of discretion standard. *See De La Paz*, 279 S.W.3d at 343–44. Appellant specifically complains about the following exchange during the prosecutor's re-direct examination of Perales:

Q. I want to go back to HGN. Defense asked you could you tell the

6

difference while conducting HGN if someone had one drink or 15 drinks.[4]  But I want to know:  Can—will HGN give you a stronger— or will you see a stronger sign of the involuntary jerking of the eye with someone who is more intoxicated than someone who is less intoxicated?

A.  Sure, you can.

Q.  Okay.  Now, you were about to say something about you can see it greater with the onset prior to 45 degrees.  Will you please elaborate on that?

A.  Yes.  As a drug recognition expert, we are trained to look at—

[Defense Counsel:]  I would object, Your Honor, as this case, as he's testified, does not involve him performing drug recognition expert tests.

[Prosecutor:]  And, Judge, he's not going to say anything about drugs.  He's about to go into alcohol.

---

[4] During cross-examination by defense counsel, Perales testified:

Q.  And can you agree with me that the HGN test is similar whether you've had one drink or 15 drinks?

A.  No.

Q.  So you can tell how many drinks someone has had when you perform the HGN test?

A.  No.  Not unless they tell me.

Q.  And so the HGN doesn't correlate to some magic number?

A.  Being trained as a drug recognition expert, I'm able to determine that based on the angle of onset.

Q.  You are?

A.  Yes.

Q.  Were you able to determine that in this case?

A.  I was able to determine that—

Q.  When—is there another test, the vertical gaze nystagmus, to you use to tell if there's been a high dosage of alcohol?

A.  I'm sorry, I don't know if I finished my question [sic]; or you don't want to hear it?

Q. I was—I was moving on.

THE COURT: Okay. Overruled.

A. We are taught to observe the angle of onset and determine where prior to 45-degree angle is; and if it's at 30 degrees, which is almost immediate, we subtract 50 from 30 [sic] and we get an answer of 20, which gives us an indication that the person is close to 0.20. And the same thing at 15 degrees and the same thing at—

[Defense counsel:] Your Honor, I'm going to object to the quantifying analysis that he's making.

THE COURT: I'll let him testify to what he was trained in. Overruled on that part.

A. Again—

THE COURT: Go ahead.

A. Again, at 15 degrees we subtract 15—I'm sorry. At 30 degrees, at 35 degrees, and at 45 degrees and we subtract that angle of onset from 50 and we're able to determine.

Q. Okay. Let me try to ask you: In layman's terms, does this mean the sooner that you start to see nystagmus, the more intoxicated someone is?

A. That is correct.

Q. Okay. And when you started to do the onset prior to 45 degrees, did you see nystagmus very early; or did you have to move the eye further to the side?

A. The—I was able to see the onset prior to 45-degree angle towards the middle as he was gazing. And then it started to do the involuntary jerking.

The Court of Criminal Appeals has held that "[a] witness qualified as an expert on the administration and technique of the HGN test may testify concerning a defendant's performance on the HGN test, but may not correlate the defendant's performance on the HGN test to a precise BAC." *Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994). Although the *Emerson* Court recognized the general reliability of the HGN test for determining intoxication, the Court stated that the margin of error was too great to allow for exact estimations of BAC based

on performance on the test.  *Id*.  In other words, a properly trained officer may opine based on the HGN test results that a defendant was under the influence of alcohol, but he or she may not testify to that defendant's exact BAC.  *Wisdom v. State*, 39 S.W.3d 320, 323 (Tex. App.—Waco 2001, no pet.) (citing *Emerson*, 880 S.W.2d at 769–70).

However, even assuming the trial court erred in admitting this portion of Perales's testimony and appellant properly preserved the error, we find that any such error was harmless and thus not grounds for reversal.  Generally, the erroneous admission of evidence is considered non-constitutional error, which is analyzed for harm under Texas Rule of Appellate Procedure 44.2(b).  Tex. R. App. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  In conducting an analysis under Rule 44.2(b), we examine the entire proceeding to determine whether the alleged error had a substantial and injurious effect on the jury's verdict.  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  If we determine the error did not influence the jury, or had but very slight effect, the verdict must stand.  *Johnson*, 967 S.W.2d at 417.  If, however, we have "grave doubts" about whether an error affected the outcome, we must treat the error as if it did.  *Hines v. State*, 396 S.W.3d 706, 710-11 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

In this case, the complained-of testimony was not particularly clear.  Perales did not expressly testify that the HGN test established appellant had a BAC over the legal limit much less offer a specific BAC for appellant.[5]  Additionally, the other evidence of appellant's guilt was particularly strong.  Perales himself

---

[5] It is also worth noting that during defense counsel's cross-examination of Perales, Perales had already testified without objection that he was able to "correlate some magic number" based on HGN test results, apparently referencing BAC.  *See supra* n.2.  Thus, some of the complained-of information was already before the jury.

concluded that—based on the field sobriety tests he administered and his observations of appellant—appellant was intoxicated at the time of his arrest and had lost the normal use of his physical and mental faculties. Additionally, the jury was able to observe appellant on the video recording, on which he is shown missing a number and repeating a number when asked to count, mistaking his left foot for his right foot, appearing unable to walk a straight line, and seeming unsteady while walking and while standing still. Moreover, analysis of a blood sample taken from appellant shortly after his arrest showed his BAC to be 0.178, more than twice the legal limit of 0.08, at the time the sample was taken, and using retrograde extrapolation, the testing criminalist determined that appellant's BAC would have been 0.195 to 0.230 at the time he was stopped.

Given the lack of clarity in the complained-of testimony and the strength of the evidence of appellant's guilt, we conclude the error did not influence the jury or had at most a very slight effect. *See Johnson*, 967 S.W.2d at 417; *see also Burkett v. State*, 179 S.W.3d 18, 34-35 (Tex. App.—San Antonio 2005, no pet.) (holding erroneous admission of testimony correlating HGN test results with BAC level was harmless error in part due to other evidence proving offense). Accordingly, we overrule appellant's first issue.

We affirm the trial court's judgment.


/s/     Martha Hill Jamison
        Justice


Panel consists of Justices Jamison, McCally, and Wise.
Publish — TEX. R. APP. P. 47.2(b).

10